IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ISAAC HOWARD, | ) | CASE NO. 1:16 CV 646 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| ALAN LAZAROFF, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Isaac Howard for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Howard was convicted by a Cuyahoga County Court of Common Pleas, jury in 2001 of two counts of attempted murder and received a sentence of 23 years to life.[3] He subsequently pled guilty to one count of murder[4] and was sentenced to 18 years to life to run concurrently to his previous sentence for attempted murder.[5] Howard is currently incarcerated at the Mansfield Correctional Institution in Mansfield, Ohio.[6]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Benita Y. Pearson by non-document order dated March 22, 2016.

[2] ECF # 1.

[3] ECF #10, Attachment 1 at 11.

[4] *Id*. at 74.

[5] *Id.* at 75.

[6] http://www.drc.state.oh.us/OffenderSearch

In his petition, Howard raises one ground for habeas relief.[7] The State has filed a motion to dismiss arguing that the petition should be dismissed as untimely.[8] Howard has filed a traverse.[9]

For the reasons that follow, I will recommend Howard's petition be dismissed as untimely.

## Facts

### A. Underlying facts, conviction, and sentence

The facts that follow come from the decision of the appeals court.[10]

In the early evening hours of August 7, 1999, three women with the last names of Merriweather, Norton, and Hagwood were on their way to the Buckeye area to look for their boyfriends.[11] At 125th Street and Buckeye, the women stopped to talk to two men that they knew, Eddie Stovall and Melvin Oliver.[12] Howard then came up to the car and asked Merriweather if she still wanted the money he owed her.[13]

---

[7] ECF # 1.

[8] ECF # 10.

[9] ECF # 15.

[10] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[11] ECF #10, Attachment 1 at 58.

[12] *Id*. at 58-59.

[13] *Id*. at 59.

According to Merriweather, Howard owed her $80 for PCP dipped cigarettes he had bought months earlier.[14]  Merriweather told him that she wanted the money and was willing to drive him to a friend's house to pick it up.[15]  Howard and Oliver got in the back seat of the car with Oliver seated in the middle next to Howard and Hagwood.[16]  Howard was seated behind Merriweather.[17]  Howard instructed Norton to drive to a house at 146th and Milverton and to pull in the driveway and park.[18]

Once they were parked, Norton stated that she turned her head, looked at Howard and "I seen a gun with a black barrel and he shot and fired and hit me in my face."  Norton escaped the vehicle and began running away when she heard two more gunshots and Howard yelling "kill that bitch."  As she ran, Howard "kept shooting" and shot her in the back and right, lower leg.[19]

At the hospital, Norton was diagnosed with having suffered a gunshot wound to her face, requiring a plate to be put in where her right jawbone used to be.[20]  Norton lost nine

---

[14] *Id*.

[15] *Id*.

[16] *Id.*

[17] *Id*.

[18] *Id*.

[19] *Id*.

[20] *Id*. at 60.

teeth and had to have her tongue, which had been blown off, sewn back into her mouth.[21] Norton also suffered gun shots to her back and right leg.[22]

During trial, Merriweather confirmed much of Norton's testimony.[23] She also told the jury that after shooting Norton, Howard then shot her in the right hand.[24] According to Merriweather, Hagwood "was the third shot she heard." Howard got out of the car, and Merriweather heard more gunshots.[25] Merriweather then slid over to the driver's side of the car and drove away.[26] Hagwood died from one gunshot to the right side of her head.[27]

Melvin Oliver testified that Howard told him about Merriweather's boyfriend, Douglas Littlejohn making threats if Merriweather did not get her money.[28] Oliver confirmed that Howard had a "black revolver" that night.[29] Oliver stated that he saw the gun in Howard's right hand and that Hagwood "had a hole in her head."[30] Oliver further testified

---

[21] *Id*.

[22] *Id*.

[23] *Id*.

[24] *Id*.

[25] *Id*.

[26] *Id.*

[27] *Id*.

[28] *Id*. at 61.

[29] *Id*.

[30] *Id*.

that he heard "4 or 5 gunshots" before he got out of the car.[31]  Once out of the vehicle, Oliver

ran away, but not before seeing Norton "crawling" on the street.[32]

Eddie Stoval testified that Howard complained to him about Littlejohn making threats

and that he was angry and said that "[h]e going to fuck Doug up." Stoval stated that not only

had Howard been smoking PCP that night, but he also saw him with the gun.[33]  Detective

Tom Lucy testified that four separate gun pellets related to the events were all from the same

gun.[34]

Howard testified in his own defense.[35]  Howard described a different sequence of

events than the other witnesses.[36]  According to Howard, Merriweather had the gun and he

stated that "I grabbed the gun, pulled her hand and it went off."[37]  According to Howard,

Merriweather's finger was on the trigger when it fired towards the back were Hagwood was

sitting.[38] On cross, Howard altered his testimony by stating that the gun was originally aimed

---

[31] *Id*.

[32] *Id.*

[33] *Id*.

[34] *Id*.

[35] *Id*. at 62.

[36] *Id*.

[37] *Id*.

[38] *Id*. at 62-63.

at him and even though it went of immediately it never hit him or Oliver.[39]  Howard took the

gun out of Merriweather's hand and then Norton turned "real quick" and "I shot her in the

face."[40]  Howard also admitted that he not only shot Norton first, but he shot her three times

and that he fatally shot Hagwood "with the last shot."[41]  Afterwards, Howard got out of the

car and ran down the street.[42]

Howard was eventually arrested and indicted for the aggravated murder of Hagwood

with mass murder specification, two firearm specifications, and two counts of aggravated

murder with firearm specifications.[43]  Howard pled not guilty to all of the charges and the

case proceeded to trial.[44]

Before charging the jury, the trial court denied Howard's request for and instruction

on self-defense finding the evidence insufficient to support such an instruction.[45]  Howard

was convicted on the two charges of attempted murder of Merriweather and Norton.[46]

---

[39] *Id.* at 63.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

The jury was unable to return a verdict on the additional charge for aggravated murder with a mass murder specification or the lesser included offense of murder relating to Hagwood.[47] Howard was sentenced to ten years on each count of attempted murder with the sentences to be served consecutively.[48] During the retrial for Hagwood's murder, Howard eventually pled guilty to the amended charge of murder with a firearm specification.[49] For Hagwood's murder, Howard received a sentence of fifteen-years to life with an additional three years on the gun specification.[50]

**B.    Direct appeal on attempted murder convictions**

*1.    Ohio Court of Appeals*

Howard, through different counsel, filed a timely[51] notice of appeal[52] with the Ohio Court of Appeals. In his brief, Howard filed two assignments of error:

1.    The trial court erred when it failed to give a self-defense instruction with regard to the two attempted aggravated murder charges.

---

[47] *Id*. at fn.1.

[48] *Id*. at 63-64.

[49] *Id*. at 64, fn.1.

[50] *Id*. at fn.2.

[51]    Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. *See*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007) (unreported case). Howard's conviction and sentence was entered on January 8, 2001 and journalized on March 2, 2001 (*id.* at 11). The notice of appeal was filed on February 9, 2001. *Id.* at 12.

[52] *Id.* at 12.

2.    The trial court erred and abused its discretion when it imposed maximum and consecutive sentences.[53]

The state filed a brief in response.[54] The Ohio appeals court overruled all two assignments of error and affirmed the decision of the trial court.[55]

## C.    Retrial on count one, aggravated murder

A retrial commenced on the aggravated murder in count one of the indictment. During jury selection, Howard entered a plea of guilty to the amended charge of murder with a three-year firearm specification.[56] On September 25, 2001, the court sentenced Howard to a term of fifteen years to life, followed by a three-year sentence for the firearm specification, to run concurrently to the sentences imposes on counts two and three.[57]  According to the record, Howard did not appeal his conviction and sentence on count one.

## D.    Motion to withdraw guilty plea

On May 29, 2003, Howard, *pro se*, filed a motion to withdraw guilty plea and plead anew, petition to amend sentence and motion for reconsideration.[58] The trial court denied Howard's motion.[59]

---

[53] *Id*. at 15.

[54] *Id.* at 34.

[55] *Id.* at 57.

[56] *Id*. at 74.

[57] *Id*. at 75.

[58] *Id*. at 76.

[59] *Id*. at 79.

### E.    Motion for resentencing on murder conviction

On November 3, 2009, Howard, *pro se*, filed a motion for resentencing on the grounds that his term of post release control was not properly imposed.[60]  The State filed a brief concurring to resentencing.[61] The trial court ordered Howard to return to court for proper advisement of post release control.[62]  On December 10, 2009, the trial court advised Howard of the five-year term of post-release control requirements.[63]

### F.    First motion for leave to file delayed appeal

On November 20, 2014, Howard, *pro se*, filed a notice of appeal[64] and motion for leave to file delayed appeal from his September 2001 conviction and sentencing for murder.[65] The court of appeals denied Howard's motion for delayed appeal and dismissed the case *sua sponte*.[66]  The record does not indicate that Howard appealed the denial to the Ohio Supreme Court.

---

[60] *Id*. at 80.

[61] *Id*. at 83.

[62] *Id*. at 86.

[63] *Id*. at 87.

[64] *Id*. at 88.

[65] *Id*. at 91.

[66] *Id*. at 140.

**G.    Second motion for leave to file a delayed appeal**

On August 6, 2015, Howard, *pro se*, filed a second notice of appeal[67] and motion for leave to file delayed appeal from the September 2001 conviction and sentencing for murder.[68] On August 20, 2015, the court of appeals denied Howard's motion and dismissed the case.[69]

**1.    *The Supreme Court of Ohio***

Howard, *pro se*, thereupon filed a timely[70] notice of appeal with the Ohio Supreme Court of his second motion for delayed appeal[71] In his brief in support of jurisdiction, he raised the following proposition of law:

> 1.    Appellant was denied due process and/or equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution when the Eighth District Court of Appeals denied him leave to file a delayed direct appeal of right.[72]

---

[67] *Id*. at 141.

[68] *Id*. at 144.

[69] *Id*. at 163.

[70] *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *See*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case). The court of appeals denied Howard's appeal on August 20, 2015. Howard filed his notice of appeal with the Ohio Supreme Court on October 2, 2015, thus it is timely.

[71] *Id.* at 165.

[72] *Id*. at 168.

The State filed a memorandum opposing jurisdiction.[73]  On December 16, 2015, the

Ohio Supreme Court declined jurisdiction under S.Ct.Prac.R. 7.08(B)(4) and dismissed the

appeal.[74]

## H.    Petition for writ of habeas corpus

On March 16, 2016, Howard, *pro se*, untimely filed[75] a federal petition for habeas

relief.[76] As noted above, he raises one ground for relief:

> GROUND ONE:    Appellant is denied due process and/or equal protection
> of the laws as guaranteed by the Fourteenth Amendment
> to the United States Constitution when the Eighth
> District Court of Appeals denied him leave to file a
> delayed direct appeal of right.

## Analysis

## A.    Preliminary observations

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Howard is currently in state custody as the
result of his conviction and sentence by an Ohio court, and that he was
so incarcerated at the time he filed this petition. Thus, he meets the "in

---

[73] *Id*. at 179.

[74] *Id*. at 188.

[75]  The present petition for federal habeas relief was filed on March 16, 2016. ECF #
1.  Howard was sentenced on September 25, 2001 in the Cuyahoga County Court of
Common Pleas.  Howard failed to timely appeal his conviction for murder, which became
final on October 25, 2001 (the expiration of the 30 day time period for seeking review under
App.R.4(A)). His AEDPA one-year statute of limitations began running the following day,
on October 26, 2001.  Absent tolling, it expired one year late on October 26, 2002.

[76] ECF # 1.

custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[77]

2.  As will be discussed below, there is a dispute, as to whether this petition was timely filed under the applicable statute.[78]

3.  In addition, Howard states,[79] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[80]

4.  Moreover, subject to the timeliness arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[81]

5.  Finally, Howard has not requested the appointment of counsel,[82] nor has he requested an evidentiary hearing to develop the factual bases of his claims.[83]

---

[77] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[78] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[79] *See*, ECF # 1 at 12.

[80] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[81] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[82] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[83] 28 U.S.C. § 2254(e)(2).

**B.    Legal Standards**

*1.    Timeliness*

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[84] a person in custody under a judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[85]

Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a "properly filed" application for state postconviction relief or other collateral review. A state application for postconviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing.[86] State postconviction

---

[84] Pub. L. No. 104-132, 110 Stat. 1214.

[85] 28 U.S.C. § 2244(d)(1).

[86] *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

or collateral review applications rejected by the state courts on timeliness grounds are not "properly filed" and, therefore, are not subject to statutory tolling under § 2244(d)(2).[87]

"The tolling provision does not, however, 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run."[88] Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar.[89]

Moreover, the AEDPA's statute of limitations is subject to equitable tolling,[90] "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control."[91] Equitable tolling is granted "sparingly."[92] A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely

---

[87] *See*, *Allen v. Siebert*, 552 U.S. 3, 5-6 (2007) (per curiam); *see also*, *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003).

[88] *Vroman*, 346 F.3d at 602 (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

[89] *Id.*

[90] *See*, *Holland v. Florida*, 560 U.S. 631, 646 (2010).

[91] *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), cert. denied, 133 S. Ct. 187 (2012).

[92] *Id.* (quoting *Robertson*, 624 F.3d at 784).

filing."[93] Although the Sixth Circuit previously used a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland v. Florida's* two-part test has replaced the five-factor inquiry as the "governing framework" to apply.[94]

## 2. *Equitable tolling*

The doctrine of equitable tolling allows courts to toll a statute of limitations when "a litigant's failure to meet a legally-mandated deadline unavoidable arose from circumstanced beyond that litigant's control."[95] The Supreme Court has held that the statute of limitations for habeas petitions is "subject to equitable tolling in appropriate cases."[96] But, the doctrine of equitable tolling is used sparingly by federal courts.[97] The party seeking equitable tolling bears the burden of proving he is entitled to it.[98] A habeas petitioner is entitled to equitable tolling only if he can make a two-part showing: (1) he has pursued his rights diligently; and (2) some extraordinary circumstance prevented timely filing.[99]

---

[93] *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also*, *Pace*, 544 U.S. at 418.

[94] *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling*, 424 F. App'x 439, 442 n.1 (6th Cir. 2011), cert. denied, 132 S. Ct. 456 (2011)).

[95] *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).

[96] *Holland v. Florida*, 560 U.S. 631, 649 (2010).

[97] *See*, *Graham-Humphreys*, 209 F.3d at 560.

[98] *See*, *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

[99] *See*, *Holland*, 560 U.S. at 649.

### 3.    *Statutory tolling*

The AEDPA requires that *habeas* petitions be filed within one year of the latest of four triggering dates set forth at 28 U.S.C. § 2244(d)(1). In this case, the threshold issue is whether Hakim timely filed his petition pursuant to 28 U.S.C. § 2244(d)(1)(A). Section 2244(d)(1)(A) provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review ...[100]

When a habeas petitioner does not file a petition for a writ of certiorari from the decision of the state court of last resort, "direct review" of the state court judgment concludes *after* the expiration of the 90-day period for filing for certiorari.[101]

Furthermore, in order to calculate the deadline pursuant to § 2244(d)(1)(A), the Court must account for collateral review of the petitioner's conviction.[102] As the United States Supreme Court stated in *Lawrence*, § 2244(d)(2) tolls the § 2244(d)(1)(A) limitations period "while a state prisoner seeks postconviction relief in state court."[103] Section 2244(d)(2) provides:

---

[100] Hakim does not argue that his petition is timely pursuant to any of the other subsections of 28 U.S.C. § 2244(d)(1).

[101] *See*, *Clay v. United States*, 537 U.S. 522, 528 n.3 (2003).

[102] *See*, 28 U.S.C. § 2244(d)(2); *Lawrence v. Florida*, 549 U.S. 327, 331 (2007).

[103] *Lawrence*, 549 U.S. at 331.

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.[104]

This tolling period, however, does not include the 90-day period during which the petitioner could seek certiorari from the state court of last resort's denial of an application for postconviction relief; the tolling period is limited to the time between the filing of an application for postconviction relief and the date of the final state court decision resolving that application.[105]

## C.    Application of standards

As the State observes, the relevant one year time period for Howard to file for federal habeas relief began on October 26, 2001, or at the time when Howard could have filed a direct appeal from his conviction and sentence at retrial.[106]  Howard did not seek an appeal, and so the one-year limitations period ran uninterrupted until October 26, 2002, when it expired.

As noted above in the procedural history, on May 29, 2003 Howard began filing a series of motions: (1) to withdraw his guilty plea, (2) to be re-sentenced and (3) for a delayed appeal.  But, as the State notes, these post-conviction actions "were filed long after his

---

[104] 28 U.S.C. § 2244(d)(2).

[105] *Lawrence*, 549 U.S. at 337.

[106] ECF # 10 at 9 (citing record).

AEDPA limitations period had already expired."[107] Once expired, subsequent filing for state collateral review cannot toll the limitations.[108] Accordingly, unless Howard can show an entitlement to equitable tolling, his petition for habeas relief must be dismissed as time-barred.

Under the applicable authority cited above, Howard waited over a year to seek to withdraw his guilty plea and over 13 years to move for a delayed appeal of his conviction and sentence. Howard had been timely in seeking direct review of his attempted murder conviction in 2001. This argues against his claim, stated in the present habeas petition, that he was unaware of his right to appeal his conviction and sentence.[109] Moreover, neither a petitioner's *pro se* status nor a claimed ignorance of the law will justify equitable tolling in habeas matters.[110] In addition, in his traverse Howard has attempted to assert that a lack of clear information from the trial court and his attorney caused his untimeliness.[111] He

---

[107] *Id.* at 10.

[108] *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003).

[109] ECF # 1 at 15. Howard maintains that it is "nonsensical" to conclude that because he knew of his right to appeal in the case of attempted murder he should have known about that right in the case of murder. ECF # 15 at 7, fn.1. Whatever distinction Howard attempts to draw concerning knowledge of a "right" to appeal in these two case, the point is raised here in the area of Howard's diligence. Even assuming that Howard was not fully, specifically and directly informed of his right to appeal in this case, the experience in the prior case should have reasonably put him on notice to make inquiries and seek answers. His inaction is not a helpful evidence of diligence.

[110] See, *United States v. Baker*, 197 F.3d 211, 218 (1999).

[111] ECF # 15 at 10.

maintains that their inaction left him "left to his own devices shrouded in ignorance."[112]  He

also appears to contend that improper or insufficient guidance from a "jailhouse lawyer" was

responsible for Howard not filing a timely appeal.[113]

The decision to accept and rely on purportedly bad advice from a non-attorney is not

grounds for equitable tolling.[114]  Further, the deadline at issue here is that for filing a federal

habeas petition, not for filing a direct appeal in Ohio.  Thus, the federal habeas court in this

instance is not adjudicating questions related to whether counsel was effective in

communicating state appellate rights.  To that end, as Judge Lioi noted in *Fitts v. Eberlin*:[115]

The Sixth Circuit has made it clear that the AEPDA statute itself gives constructive
notice of the one-year statute of limitations, even if the petitioner is unaware of the statute.[116]

Howard has not shown a basis for equitable tolling in this case as it relates to poor

advice or any other external circumstance.

Finally, as noted, the Supreme Court has held that the AEDPA limitations period may

be subject to equitable tolling for actual innocence.  But, neither in his petition or in the

traverse has Howard alleged actual innocence. Further, a review of the petition does not

disclose any grounds supporting actual innocence.

---

[112] *Id*. at 9.

[113] *Id*.

[114] *Granados v. Cook*, No. 2:16 CV 879, 2016 WL 4991690, at * 2 (S.D. Ohio Sept. 19, 2016)(report & recommendation)(collecting cases), *accepted*, No. 2:16 CV 879, 2016 WL 5930965 (S.D. Ohio Oct. 12, 2016).

[115] *Fitts v. Eberlin*, 626 F.Supp.2d 724 (N.D. Ohio 2009).

[116] *Id*. at 730 (citation omitted).

## Conclusion

Accordingly, and for the reasons stated, I recommend that the *pro se* petition of Isaac Howard be dismissed as untimely.

Dated: September 20, 2017            s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[117]

---

[117] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).